UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JANET SAHM, et. al.,           )
           )
       Plaintiffs,        )
           )
      v.           )       Case No. 4:23-cv-00200-AGF
           )
AVCO CORPORATION, et. al.,     )
           )
       Defendants.     )

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion to remand.  (Doc. No. 19).

Defendant Raytheon Technologies Corporation ("Raytheon") has timely responded to the

motion, and the motion is now ripe for disposition.  (Doc. No. 35).  For the reasons

outlined below, the Court will deny the motion.

**Background**

Plaintiffs first filed suit in the Circuit Court of the City of St. Louis on January 13,

2023 pursuant to R.S. Mo. § 537.080 *et seq*.  (Doc. No. 19 at 1).  Plaintiffs are the

surviving heirs of decedent Gustave Sahm, who Plaintiffs allege died from lung cancer

due to his exposure to asbestos-containing products from 1956 through 2020 while

working in the U.S. Navy or while employed in various capacities.  (Doc. No. 5 at 2).

Although sparse on details, the petition alleges that, "[a]t the time Defendants and each of

them manufactured, sold, and distributed the asbestos-containing products to which [Mr.

Sahm] was exposed, said products were in a defective condition and were unreasonably

1

dangerous. . .".  *Id*. at 6, ⁋ 11.  As relevant here, Plaintiffs contend that Mr. Sahm was exposed to asbestos while working as a Police Officer for St. Louis County (the "County") from 1962 through 1991.  *Id*.  Specifically, Plaintiffs allege that he worked with the St. Louis County Police Department's Helicopter Unit, and that the Raytheon products present on those helicopters contained asbestos fibers contributing to his lung cancer.  (Doc. No. 20 at 1-2).[1]  Raytheon timely removed this case pursuant to 28 U.S.C. § 1442(a)(1) on the grounds of federal officer jurisdiction.  (Doc. No. 1 at 3).

**Legal Standards**

Federal courts are of "limited jurisdiction," and posses only the power authorized by the Constitution or by statute.  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (internal quotations omitted).  A defendant may remove a civil action from state court to federal district court if the district court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a); *see also In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010).  In most contexts, the Court construes removal statutes strictly.  *See Cagle v. NHC HealthCare-Maryland Heights, LLC*, No. 4:21CV1431 RLW, 2022 WL 2833986, at *2 (Jul. 20, 2022), appeal filed, (8th Cir. 2022) (internal citations omitted).  The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction, and doubts about federal jurisdiction are resolved in favor of remand.  *See Mensah v. Owners Ins. Co.*, 951 F.3d 941, 943 (8th Cir. 2020).  The removing party

---

[1] Although claims against Raytheon in the petition were arguably more broad-based and would have included Mr. Sahm's time in the Navy, in their motion to remand, Plaintiffs stipulate that "no exposure occurred during Mr. Sahm's time in the Navy or while working at McDonnell-Douglas to [Raytheon's] products."  (Doc. No. 20, at 2).

bears this burden by a preponderance of the evidence.  *See Turntine v. Peterson*, 959 F.3d 873, 881 (8th Cir. 2020).

Title 28 U.S.C. § 1442(a)(1) "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984) (internal quotations and marks omitted).  Section 1442 allows removal of any civil or criminal action against the United States, or "any agency thereof or any officer (or person acting under that officer) of the United States or any agency thereof", when sued in an "official or individual capacity for any act under color of such office."  28 U.S.C. § 1442(a)(1).  When the removing party is not a federal officer or agency, "it may remove a case only if it shows it was 'acting under' a federal officer or agency in carrying out the acts that underline the plaintiff's complaint." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)).

Federal officer jurisdiction requires a removing party meet four elements: (i) the defendant has acted under the direction of a federal officer, (ii) there was a causal connection between the defendant's actions and the official authority, (iii) the defendant has a colorable federal defense to the plaintiff's claims, and (iv) the defendant is a "person" within the meaning of the statute. *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (internal quotation omitted), *abrogated on other grounds by BP P.L.C. V. Mayor and City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021).  The Supreme Court has made clear that the statute must be liberally construed, and courts must broadly interpret the term "acting under." *Watson*, 551 U.S. at 147 (internal

quotations omitted).  Nevertheless, the term is not "limitless."  *Cagle*, 2022 WL 2833986, at *9 (internal citations omitted).

**Arguments of the Parties**

In their motion to remand, Plaintiffs contend that Raytheon can meet neither the first nor third of the four elements required for federal officer jurisdiction.  (Doc. No. 19 at 3).  First, Plaintiffs assert that Mr. Sahm was exposed to Raytheon's products while working with the St. Louis County Police Department's Helicopter Unit, which has no connection to the federal government.  *Id*. at 4.  Although Raytheon claims in its notice of removal that the County would have acquired these helicopter components from military surplus, and that it built the helicopter parts at the military's direction, Plaintiffs allege that there is insufficient evidence to support this claim.  *Id*.  Thus, Plaintiffs argue, Raytheon cannot uphold its burden to show that it acted under the direction of a federal officer for the purposes of federal officer jurisdiction.  *Id*.

Second, Plaintiffs argue that Raytheon has not raised a colorable federal defense to Plaintiffs' claims, as required by the third element of federal officer jurisdiction.  (Doc. No. 19 at 5).[2]  In its notice of removal, Raytheon raises the defense of government contractor immunity.  (Doc. No. 1 at 8).  However, Plaintiffs argue that Raytheon has not provided any documents or other evidence to show that this defense is plausible.  (Doc. No. 19 at 5).  As Raytheon was not acting under the direction of a federal officer and

---

[2] In its Notice of Removal, Raytheon specifically requested an opportunity to respond more fully in writing, including with affidavits, should Plaintiffs file a motion to remand. (Doc. No. 1, at 7, ¶ 23).

does not raise a colorable federal defense to Plaintiffs' claims, Plaintiffs assert that remand does not contravene the purpose of § 1442 and is appropriate here. *Id*. at 5-6.

In response, Raytheon explains that it manufactured aircraft engines for the United States military, and designed and built those engines "in accordance with reasonably precise specifications provided or approved by the United States government." (Doc. No. 35 at 2). Prior to building the engines, the United States military would first inspect and approve of the drawings, plans, technical manuals and other design documentation. *Id*. All warnings and manuals for the engines were dictated by the military. *Id*. Raytheon presented evidence that the only Raytheon helicopter product at Mr. Sahm's job site during the time in question was a Pratt & Whitney R-985 radial engine (the "Pratt & Whitney") acquired by the County through military surplus. As such, Raytheon was acting under the direction of the military when it built the engine, meeting the first element required for federal officer jurisdiction. *Id*.

Raytheon next argues that it has sufficiently raised the colorable federal defense of federal contractor immunity. (Doc. No. 35 at 3). This defense requires showing that the United States approved reasonably precise specifications, the equipment conformed to those specifications, and Raytheon warned the United States about those dangers known to it. *Id*. at 5-6. Raytheon contends that it did so when it and the United States jointly completed the warnings and manuals for the Pratt & Whitney. *Id*. at 6. Raytheon therefore contends that it has upheld its burden on the third element required for federal officer jurisdiction.

In their reply, Plaintiffs argue that Raytheon has not shown that the federal

5

government specifically prohibited it from applying a warning label to the engine

warning of asbestos exposure, and thus fails to meet the "acting under" requirement of

the first element of federal officer jurisdiction.  (Doc. No. 41 at 3).  Further, Plaintiffs

assert that the County owned the helicopter parts to which Mr. Sahm was exposed, rather

than the military or federal government.  *Id*.

**Discussion**

**I.      Whether Raytheon Acted Under the Military's Direction**

Although the term "acting under" is broadly interpreted, "not all relationships

between private entities and the federal government satisfy this element."  *Buljic*, 22

F.4th at 738.  The private party's actions must "help carry out" governmental tasks and

must go beyond mere compliance with the law or regulations.  *Id*. at 738-739 (emphasis

removed).  Government contractors fall within the terms of the federal officer removal

statute when the relationship between the contractor and the government "is an unusually

close one involving detailed regulation, monitoring, or supervision."  *Watson*, 551 U.S. at

153.  Cases in which the Supreme Court has approved federal officer jurisdiction

"involve defendants working hand-in-hand with the federal government to achieve a task

that furthers an end of the federal government."  *Bailey v. Monsanto Company*, 175 F.

Supp. 3d 853, 869-870 (E.D. Mo. 2016) (internal quotations omitted).  A voluntary

request that the military review and provide input regarding instructions or warnings does

not demonstrate this close relationship.  *See Graves v. 3M Company*, 17 F.4th 764, 770

(8th Cir. 2021).  In contrast, a showing that the military required products be sent without

warnings or instructions, and that the military instead provided its own, is sufficient for

6

the "acting under" prong of federal officer jurisdiction.[3]  *Id*.  *See also Isaacson v. Dow*

*Chem. Co.*, 517 F.3d 129, 137-138 (2nd Cir. 2008) (finding that manufacturers of Agent

Orange were entitled to federal officer removal in cases asserting negligence and

products liability claims because the companies directly contracted with the government

for the production of Agent Orange and the chemical was produced to the detailed

specifications of the government).

In support of its contention that it built the Pratt & Whitney at issue in this case

hand-in-hand with the United States military, Raytheon provides the affidavit of John C.

Sumner, an aerospace engineer for Raytheon[4] since 1965.  (Doc. No. 35-1).  Mr. Sumner

explains that the military provided oversight for the design, manufacture, and testing of

Pratt & Whitney engines, including the one at issue.  *Id*. at 3.  During the development

stage, the military provided "extensive and detailed performance and construction

---

[3] Though Plaintiffs explicitly address only the "acting under" requirement in this portion
of their motion, their argument that Mr. Sahm suffered his injury while working with the
St. Louis County Police Department's Helicopter Unit, rather than while working with
the military, impliedly suggests that Raytheon cannot show a "causal connection"
between its work with the military and the actions giving rise to this suit.  *See* (Doc. No.
41 at 3).  The "causal connection element is closely related to the 'acting under' element
when the party seeking removal is not itself a federal officer."  *Graves*, 17 F. 4th at 769.
To the extent that Plaintiffs argue there is no causal connection, the Court denies that
argument.  Raytheon asserts that the County purchased the Pratt & Whitney from military
surplus, and that it designed the Pratt & Whitney under military control.  (Doc. No. 35 at
3).  Plaintiffs allege that the Pratt & Whitney exposed Mr. Sahm to asbestos without
proper warning.  (Doc. No. 41 at 3).  Raytheon's assertions therefore show the required
causal connection between the harm Plaintiffs allege and its connection to the military.
*See id*. (requiring a causal connection between the charged conduct and the official
authority).

[4] Mr. Sumner worked for Pratt & Whitney, an unincorporated division of Raytheon.
(Doc. No. 35-1 at 1).

specifications to be incorporated" in the contract for the design and manufacture of the engines. *Id*. These specifications included operating characteristics, performance requirements, detailed configuration definitions, construction standards, mandatory qualification and acceptance testing procedure, and documentation requirements. *Id*. at 3-4. They also mandated the use of military standard parts developed for use in aircraft engines. *Id*. at 4. Engineers would submit drawings, schematics, model specifications and engineering data for the military's approval prior to beginning construction. *Id*. This military oversight also extended to the warning labels and manuals for the Pratt & Whitney, as the military approved, rewrote, published, and distributed the warnings. *Id.* at 6. Plaintiffs have not disputed any of this evidence. As the County obtained the Pratt & Whitney at issue from military surplus, these requirements were necessarily applied to that engine as well.

Plaintiffs' arguments that Raytheon fails to meet the first element because Mr. Sahm "was exposed to [Raytheon] products during his time working for the St. Louis County Police Department Helicopter Unit, which has no connection to the federal government or the United States military," (Doc. No. 20 at 4), has no merit. Plaintiffs allege the products giving rise to the exposure were defective and unreasonably dangerous when manufactured, and that the products were in the same condition when they arrived at the plant. Thus, it is Raytheon's manufacture of the product for the military that is at issue. And as Raytheon has argued, without response from Plaintiffs, courts recognize the government contractor defense continues to apply when products manufactured for the military end up in the hands of civilian operators. *See Skyline Air*

8

*Service, Inc. v. G.L. Capps Co.*, 916 F.2d 977 (5th Cir. 1990); *Glassco v. Miller Equipment Co., Inc.*, 966 F.2d 641 (11th Cir. 1992).

With respect to the alleged failure to warn, rather than voluntarily requesting the military's review of the Pratt & Whitney's design and warnings, the military required that Raytheon provide specific warnings and instructions, going so far as to rewrite portions of the warnings itself. (Doc. No. 35-1 at 6). This oversight indicates an unusually close relationship between Raytheon and the military and suggests that Raytheon built the Pratt & Whitney to assist the government with its construction of military helicopters.[5] The Court holds that this is sufficient to meet the "acting under" requirement of federal officer jurisdiction, and that remand is therefore not appropriate on this basis.

## II.     Whether Raytheon has Raised a Colorable Federal Defense

The Eighth Circuit has long held that "§ 1442(a)(1) does not require a court to hold that a defense will be successful before removal will be appropriate." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001). A removing defendant may establish federal officer jurisdiction "with specific factual allegations…combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *O'Shea v. Asbestos Corporation, Ltd.*, Case No. 3:19-cv-127, Case No. 2:19-cv-142, 2019 WL 12345572, at *4 (D. N.D. Dec. 13, 2019) (quoting *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017)) (further internal citations and marks omitted). The

---

[5] The Court likewise finds that Mr. Sumner's affidavit constitutes sufficient evidence of Raytheon's relationship with the military at this stage of the proceedings. *See Turntine*, 959 F.3d at 881 (requiring the moving party support removal with a preponderance of the evidence).

Supreme Court has provided "clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right [§ 1442(a)(1)] creates[.]" *Id*. at \*5 (citing *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 781-782 (E.D. Pa. 2010)).  Defendants are not required to make a "significant showing of the merits of their defense at this early stage." *Id*. (citing *Hagen.*, 739 F. Supp. 2d at 781-782).  Such a showing would violate the principal that the defendant moving for removal under federal officer jurisdiction "need not win [its] case before [it] can have it removed." *Graves*, 17 F.4th at 773 (citing *Willingham v. Morgan*, 395 U.S. 401, 407 (1969)).

In order to successfully assert a government contractor defense, Raytheon must provide specific factual allegations and reasonable extrapolations that the activity involves a "uniquely federal" interest warranting the displacement of state law, and that: (i) the United States military approved reasonably precise specifications, (ii) the supplied equipment conforms to those specifications, and (iii) Raytheon warned the military about the dangers of the equipment known to it, but not to the military.  *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).  The production of products for military use is a "uniquely federal" interest warranting the displacement of state law, passing the first portion of the *Boyle* test.  *See Glassco*, 966 F.2d at 643.

In his affidavit, Mr. Sumner explains that Raytheon provided all specifications to the military for review and development, and that it built the Pratt & Whitney engine at issue pursuant to those specifications. *See generally*, (Doc. No. 35-1).  Raytheon also alleges that the United States military had greater knowledge of the dangers of asbestos than it did at the time it built the engine.  (Doc. No. 35 at 7).  In support, it provides an

affidavit from William P. Ringo, an expert in industrial hygiene literature regarding asbestos, including the government's knowledge of the dangers of asbestos to those who worked as aircraft engine mechanics from the 1940s through the 1980s.  (Doc. No. 35-2 at 2).  Mr. Ringo explains that the government was aware of the potential health hazards of working with or around asbestos from the 1930s through the 1980s.  *Id*. at 3.  He also contends that, based upon that knowledge, the government would not have concluded that such work posed a risk from asbestos exposure and would not have warned of such dangers.  *Id*.  Raytheon therefore contends that the military knew more of the dangers of asbestos than it, and still would not have warned about the dangers of exposure from the Pratt & Whitney engine.  (Doc. No. 35 at 7).  Thus, Raytheon argues, its production of the Pratt & Whitney meets the second half of the *Boyle* test for the application of the government contractor defense.

Plaintiffs argue that this defense is inapplicable to "duty to warn" cases.  In so arguing, they point to *Glassco*, in which the Eleventh Circuit found that the district court's grant of summary judgment on the issue of whether the government failed to warn that a leather belt would have a limited useful life was inconsistent with *Dorse v. Eagle-Picher Industries, Inc.*, 898 F.2d 1487 (11th Cir. 1990).  966 F.2d at 643-644.  In *Dorse*, the Eleventh Circuit noted that the *Boyle* test is not "rendered completely meaningless in 'failure to warn' cases."  898 F.2d at 1489.  Instead, the government contractor defense was available when the government prohibited a specific warning.  *Id*.  It was not available only under the facts of that case, where the plaintiff's Director of Claims testified that the government did not prohibit a specific warning that the defense was

11

unavailable.  *Id*. at 1490.  Here, Raytheon has alleged that the government strictly oversaw each part of the development of the product and its warnings.  (Doc. No. 35 at 2).  This case is therefore distinct from *Glassco* and *Dorse* in that the military determined which warnings were included and ensured the warnings aligned with its interests, while the manufacturers in *Glassco* and *Dorse* had leeway to omit certain warnings if they so chose.  The Court therefore finds that, at this stage of the proceedings, the government contractor defense is applicable to this "duty to warn" case.

The Court holds that Raytheon's specific factual allegations are sufficient for alleging a colorable government contractor defense.  Furthermore, as Raytheon has provided affidavits to support these allegations, the Court finds that it has provided sufficient evidence from which the Court can make reasonable extrapolations regarding the plausibility of the defense.  As Raytheon has sufficiently demonstrated that it acted under federal authority when constructing the Pratt & Whitney engine and the warnings thereto, and that it has a colorable government contractor defense, the Court finds that it may exercise federal officer jurisdiction over this case.  The Court will therefore deny Plaintiffs' motion to remand.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand is **DENIED**. (Doc. No. 19).

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of May, 2023.

12