UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANET SAHM, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00200-AGF |
| | ) | |
| AVCO CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants The Boeing Company's ("Boeing") and Morton International LLC's ("Morton") motions to dismiss. ECF Nos. 111 and 117. Plaintiffs filed timely Responses to Defendants' motions. ECF Nos. 114 and 120. The Defendants have not filed Replies, and the time to do so has passed. For the reasons set forth below, the Court will grant Boeing's Motion to Dismiss and will deny Morton's Motion to Dismiss.

## Background

Plaintiffs first filed suit in the Circuit Court of the City of St. Louis on January 13, 2023, raising claims for wrongful death under Mo. Rev. Stat. § 537.080. ECF No. 5 at 2. Defendant Raytheon Technologies Corporation timely removed this case under 28 U.S.C. § 1442(a)(1) on federal officer jurisdiction grounds. ECF No. 1 at 3.

After the Court granted several motions to dismiss filed by various Defendants for either failing to state a claim or for lack of personal jurisdiction (ECF Nos. 75 and 77),

1

Plaintiffs moved to amend their Petition. ECF No. 92. The Court granted Plaintiffs' motion. ECF No. 99. Plaintiffs then filed a First Amended Complaint, which again raises claims for wrongful death under Mo. Rev. Stat. § 537.080 against ten Defendants, including Boeing[1] and Morton.

The following facts are taken from the First Amended Complaint. ECF No. 100. Plaintiffs are the surviving heirs of decedent Gustave Sahm, who Plaintiffs allege died from lung cancer due to his exposure to asbestos-containing products. Plaintiffs allege that from 1962 until 1991, Mr. Sahm worked as a police officer for the City of St. Louis and as part of the St. Louis County aircraft and helicopter team. Plaintiffs further allege, in general terms and referencing the Defendants collectively, that during his employment with the City of St. Louis Police Department and/or the St. Louis County aircraft and helicopter team, Mr. Sahm was exposed to asbestos-containing products that were manufactured, sold, distributed, and/or installed by Defendants. They also allege that:

> [a]t various times during the course of [his] life, [Mr. Sahm] was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was using, or around others using, which were manufactured, sold, distributed or installed by the Defendants and the Defendants' products. . . . [His] exposure to the materials, products, equipment, activates [sic] and conditions attributable to the various Defendants occurred at different times as to each and not necessarily throughout Decedent's entire career or life as to any particular Defendant.

*Id*. at ¶ 9.

Plaintiffs allege that each "Defendant is amenable to suit in the State of Missouri

---

[1] The Court had previously dismissed the claims asserted against Boeing in the original Petition for lack of personal jurisdiction. ECF No. 75.

2

by reason of having sold, distributed and/or installed the aforementioned asbestos-containing products in Missouri and by reason of having placed the same into the stream of commerce for use in Missouri . . . ." *Id.* at ¶ 10.

Plaintiffs bring two counts against all Defendants: Count I for strict liability and Count II for negligence. In Count I, Plaintiffs allege that "Defendants and each of them manufactured, sold and distributed the asbestos-containing products to which [Mr. Sahm] was exposed," and that the products "were in a defective condition and were unreasonably dangerous" in that they contained asbestos fibers without a proper warning. *Id.* at ¶ 12. In Count II, they allege that "Defendants and each of them failed to exercise ordinary care and caution for the safety of [Mr. Sahm]" by negligently including asbestos in products to which Mr. Sahm was exposed. *Id.* at ¶ 21.

Plaintiffs allege that Boeing is a foreign corporation doing business in Missouri as the successor-in-interest to the McDonnell Douglas Corporation and that St. Louis "was [Boeing's] nerve-center during the relevant time period for specific jurisdiction and [Boeing's] decisions on asbestos-warning labels and use of asbestos components occurred in Missouri at Defendant's nerve-center." *Id.* at ¶ 8(2).

Plaintiffs allege that Morton is a foreign corporation doing business in Missouri and that Morton's alleged negligence occurred in Missouri. *Id.* at ¶ 8(8). Plaintiffs specifically allege that Morton "exposed [Mr. Sahm] to asbestos-containing brakes and asbestos-containing brake parts [and] manufacter[ed] asbestos containing O-Rings for helicopters and small plane engines, contracted their sale, and sold replacement parts to the St. Louis County Police Department and Missouri based co-defendant, McDonnell

3

Douglas, failing to warn [Mr. Sahm] during his work on helicopters in Missouri." *Id.*

## Discussion

Both Boeing and Morton argue that Plaintiffs have failed to adequately establish the Court's personal jurisdiction over them.  ECF Nos. 111 and 117.  Morton also alleges that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  The Court will first address whether it has personal jurisdiction over Boeing and Morton and will then turn to whether Plaintiffs have adequately stated a claim against Morton.

    A.    <u>Personal Jurisdiction</u>

        1.    Legal Standard

Personal jurisdiction over a defendant "represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks and citation omitted).  Plaintiffs bear the burden of establishing a "prima facie showing of jurisdiction," and the Court views the facts in the light most favorable to plaintiffs.  *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021). "The evidentiary showing required at the prima facie stage is minimal." *Bros. and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F. 4th 948, 951 (8th Cir. 2022) (citation omitted).  To establish the prima facie showing, plaintiffs must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *Id*.  The Court may also review affidavits and other exhibits to determine whether personal jurisdiction exists.  *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

4

Personal jurisdiction takes two forms: general and specific.  *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).  For a corporation, the paradigm forum for the exercise of general jurisdiction is its state of incorporation or its principal place of business.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, and where that connection is absent, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Zazzle*, 42 F.4th at 952 (cleaned up).  "[T]he existence of personal jurisdiction depends on the long-arm statute of the forum state and the federal Due Process Clause."  *Id.* at 951 (citation omitted).  These are separate inquiries, and both must be met to permit personal jurisdiction over a foreign defendant.  *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475–76 (8th Cir. 2012).

Missouri's long-arm statute authorizes jurisdiction over defendants as to any cause of action arising from, among other things, the person or firm's "transaction of any business within this state" or the "commission of a tortious act" within Missouri.  Mo. Rev. Stat. § 506.500.1(1); *see also Zazzle*, 42 F.4th at 924.

Due process requires that there be "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice." *Aly v. Hanzada for Import & Export Co.*, 864 F.3d 844, 849 (8th Cir. 2017) (citations and internal quotation marks omitted).  "A defendant's contacts with the forum state must be

5

sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820–21 (8th Cir. 2014) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). "Sufficient minimum contacts requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 821 (citation and internal quotation marks omitted). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contact or of the unilateral activity or another party or a third person." *Id.* (quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003)). Importantly, the relationship between the defendant and the action must arise out of contacts that the defendant itself creates with the forum state; contacts between the plaintiff and the forum state do not satisfy this inquiry. *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In assessing a defendant's minimum contacts with the forum, district courts in the Eighth Circuit consider five factors: (i) the nature and quality of the contacts, (ii) the quantity of the contacts, (iii) the relationship of the cause of action to the contacts, (iv) the interest of the forum state in providing a forum to its residents, and (v) the convenience to the parties. *See Pederson*, 951 F.3d at 980. Courts give "significant weight to the first three factors." *Id.* "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

6

2. General Jurisdiction

Plaintiffs allege that Defendants are "foreign corporations," which generally would preclude finding general jurisdiction over them. Boeing is incorporated in Delaware and has its principal place of business in Virginia. ECF No. 111-5. Morton argues that it is not "at-home" in Missouri, and Plaintiffs have neither alleged that Morton's principal place of business is in Missouri nor that any of Morton's members are Missouri citizens. In their Response to Morton's Motion to Dismiss, Plaintiffs attempt to treat Morton International, Inc. and Morton International, LLC, the Defendant here, as though they are the same. In any event, Plaintiffs seem to accept and have attached an exhibit showing that Morton in incorporated in Indiana and has its principal place of business in Pennsylvania. Even so, Plaintiffs urge the Court to exercise general personal jurisdiction over both Boeing and Morton under the principles established in the recent United States Supreme Court decision in *Mallory v. Norfolk S. R.R. Co.*, 600 U.S. 122 (2023).

In *Mallory*, the Supreme Court concluded that a Pennsylvania state court had general jurisdiction over the defendant, a Virginia railroad corporation, in a case alleging harms that occurred in Ohio and Virginia. The Court held that a Pennsylvania consent statute that requires out-of-state corporations to consent to general personal jurisdiction in Pennsylvania's courts as a condition of registering to do business in the commonwealth was sufficient to confer general jurisdiction over the foreign defendant. *See id.* at 134–35. In so holding, the Court emphasized the importance of the explicit authority to exercise general jurisdiction over registered foreign corporations found in 42 Pa. Cons.

7

Stat. § 5301(a)(2)(i). *Id.* at 134 ("Pennsylvania law is explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations."). The Pennsylvania statute is explicit that foreign corporations consent to general jurisdiction as part of registering to do business in Pennsylvania:

> (a) General rule. -- The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable tribunals of this Commonwealth to exercise general personal jurisdiction over such a person, . . . and to enable such tribunals to render personal orders against such person . . . :
>
> . . . .
>
> (2) Corporations.--
>
> (i) Incorporation under or qualification as a foreign corporations under the laws of this commonwealth.

42 Pa. Cons. Stat. § 5301(a)(2)(i).

Plaintiffs' Amended Complaint alleges that both Boeing and Morton have registered to do business in Missouri. Plaintiffs argue that Missouri's statutory scheme—which requires foreign corporations to register with the Missouri Secretary of State to conduct business within the state—mirrors the Pennsylvania statutes at issue in *Mallory* such that this Court should find that Boeing and Morton have consented to general personal jurisdiction in Missouri. ECF No. 114 at 2–4; ECF No. 120 at 2–6. In further support of this argument, Plaintiffs rely heavily on *In re Abbott Labs.*, --- F. Supp. 3d ----, 2023 WL 4976182 (N.D. Ill. Aug. 3, 2023).

The district court in *In re Abbott* concluded that Pennsylvania's statutory scheme

8

at issue in *Mallory* is substantially similar to Missouri's statutes that require foreign corporations to register with the Missouri Secretary of State before conducting business in Missouri.  The court found that, given this similarity, the defendant consented to general jurisdiction in Missouri because it registered to do business within the state.  The district court relied on Mo. Rev. Stat. § 351.571, which requires corporations desiring to do business in Missouri to obtain a certificate of authority from the Missouri Secretary of State.  *In re Abbott*, 2023 WL 4976182, at *3.  The court also relied on Mo. Rev. Stat. § 351.582, which states that the certificate of authority bestows the foreign corporation with "the same but no greater rights" and "the same but no greater privileges" and subjects the foreign corporation to "the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character."  *In re Abbott*, at *3.  Based on its reading of these Missouri statutes, the district court held that "[l]ike Pennsylvania, Missouri requires registered foreign corporations like [defendant] to consent to suit in its courts."  *Id.*

The Court finds the analysis from *In re Abbott* unpersuasive and declines Plaintiffs' invitation to follow its conclusion.  In particular, the Court finds that the statutory scheme in Missouri is not explicit that a foreign corporation registered to do business in Missouri submits to general jurisdiction in its courts.  Unlike the Court in *Mallory*, the district court in *In re Abbott* fails to cite to a statute in Missouri that explicitly permits courts to exercise general jurisdiction over a foreign corporation registered to do business in Missouri.  The Court finds that, absent a Missouri statute providing an explicit grant of general jurisdiction over registered foreign corporations,

9

the holding in *Mallory* is not applicable. *See Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, --- F. Supp. 3d ----, 2023 WL 5822503, at *6 (D. Colo. Sept. 8, 2023) (similarly refusing to find general jurisdiction over a defendant registered to do business in Colorado because "unlike *Mallory*, Colorado law is not explicit that qualification as a foreign corporation shall permit state courts to exercise general personal jurisdiction over a registered foreign corporation, just as they can over domestic corporations.") (citation and internal quotation marks omitted).

Plaintiffs fail to cite to any Missouri statute that provides an explicit statement permitting the exercise of general personal jurisdiction over foreign corporations registered to do business in the state. The Court therefore will not find general jurisdiction over Boeing and Morton based on mere allegations that these Defendants are foreign corporations registered with the Missouri Secretary of State.

Indeed, Plaintiffs arguments with respect to Morton fail for an even more fundamental reason. Plaintiffs do not even allege that Defendant Morton International, LLC is registered to do business in Missouri. Instead, Plaintiffs argue that "Morton International, Inc." is registered to do business in Missouri and that Morton International, LLC "appears" to be the same entity. ECF No. 120 at 4-5. Setting aside any issues regarding the differences between establishing citizenship of an LLC versus a corporation, Plaintiffs' admission that they could find no evidence that Morton International, LLC is registered to do business in Missouri undermines their entire argument regarding the Court's general jurisdiction over Morton.

10

   3.  Specific Jurisdiction

    a.  Boeing

Boeing argues that Plaintiffs have failed to allege facts establishing that their claims arise from Boeing's contacts with Missouri. ECF No. 111 at ¶ 6. The Amended Complaint alleges the types of products that Boeing allegedly "manufactured, sold, distributed or installed" to which Mr. Sahm was allegedly exposed. These include "airplanes, asbestos-containing aviation parts, such as asbestos wiring, asbestos fire sleeves, asbestos insulation, asbestos brakes, . . . asbestos gaskets, and . . . asbestos insulation." ECF No. 100 at ¶ 8(2). Plaintiffs do not specify an exact time when Mr. Sahm was allegedly exposed to asbestos-containing products. But the Amended Complaint now limits Mr. Sahm's alleged exposure to his time working for the City of St. Louis Police Department and the St. Louis County aircraft and helicopter team from 1962 to 1991.[2] Plaintiffs note in their Response that their Amended Complaint states that "Boeing is 'amenable to suit in the State of Missouri by reason of having sold, distributed and/or installed . . . asbestos-containing products in Missouri or by reason of having

---

[2] Plaintiffs also allege that Boeing "exposed [Mr. Sahm] to . . . the McDonnell-Douglas plant in St. Louis that contained various asbestos-containing products, including but not limited to asbestos insulation." ECF No. 100 at ¶ 8(2). However, the Amended Complaint does not contain allegations that Mr. Sahm worked at the McDonnell-Douglas plant, nor do they allege a time frame when Mr. Sahm would have been exposed to any asbestos-containing products at the McDonnell-Douglas plant. While allegations related to Mr. Sahm's prior military service and employment, including employment at McDonnel-Douglas, appeared in the initial Petition, Plaintiffs have abandoned these allegations and limited the relevant time frame and employment history. In any event, these allegations, standing alone, cannot provide the basis for finding specific jurisdiction over Boeing.

11

placed the same into the stream of commerce for use in Missouri.'" ECF No. 114, at 7–8. These allegations are arguably sufficient to allege that Boeing has conducted business in the state or committed a tortious act in the state, which could permit the exercise of personal jurisdiction over Boeing under the Missouri long-arm statute.

But the Amended Complaint does not provide sufficient allegations to survive a due process analysis because there are no allegations regarding the relationship between Boeing's contacts with Missouri and the claims at issue. Plaintiffs simply allege that Boeing "exposed" Mr. Sahm to asbestos-containing airplanes and aviation parts. But they provide no further detail linking Boeing specific asbestos-containing products to Mr. Sahm's employment. Rather, Plaintiffs' allegations regarding Mr. Sahm's exposure lump all Defendants together. ECF No. 100 at ¶ 4 ("During the course of his employment, [Mr. Sahm] was exposed to . . . asbestos fibers emanating from certain products he was working with or around, which were manufactured, sold distributed and/or installed by the Defendants."). As was discussed in the Court's previous Order dismissing Plaintiffs' claims against Boeing for lack of personal jurisdiction, pleadings that "indiscriminately lump defendants together in asserting jurisdictional allegations" will not support finding personal jurisdiction over any one defendant. *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, No. 4:20-cv-01444-MTS, 2021 WL 3725680, at \*4 (E.D. Mo. Aug. 23, 2021) (citation omitted).

Plaintiffs also allege that "St. Louis was Defendant's nerve-center during the relevant time period for specific jurisdiction and Defendant's decisions on asbestos-containing warning labels and use of asbestos components occurred in Missouri at

12

Defendant's nerve-center." ECF No. 100 at ¶ 8(2).  While an allegation that Missouri is Boeing's principal place of business could support an argument for *general* jurisdiction, it has no bearing on whether the Court can exercise *specific* jurisdiction over Boeing. And even if Plaintiffs had alleged that Boeing's principal place of business is in Missouri, Boeing has presented evidence that its principal place of business is in Virginia. Outside of conclusory allegations that lump Boeing in with other Defendants, Plaintiff have failed to make any specific allegations connecting Boeing's contacts with Missouri to the allegations in their Complaint. Without such allegations, the Court is unable to determine the nature and quality of Boeing's contacts with Missouri, the quantity of those contacts, or, most importantly, the relationship between those alleged contacts and the action. Plaintiffs have therefore failed—now for a second time—to establish the Court's general or specific personal jurisdiction over Boeing, and the Court will grant Boeing's Motion to Dismiss for lack of personal jurisdiction.

b. Morton

Morton argues that the Missouri long-arm statute provides no basis for specific jurisdiction over it. Morton also argues that the exercise of personal jurisdiction over it would violate due process because there are insufficient allegations that Morton's contacts with Missouri are connected to the controversy. Specifically, Morton argues that there are no allegations that Plaintiff was exposed to any of Morton's products in Missouri. The Court is not persuaded by these arguments.

Plaintiffs allege both that Morton is susceptible to specific jurisdiction in Missouri under Missouri's long-arm statute and that Morton's alleged contacts with Missouri are

13

connected to the underling controversy. Specifically, Plaintiffs reference specific asbestos-containing products for helicopters and small plane engines and allege that Morton "sold replacement parts to the St. Louis County Police Department." ECF No. 100 at ¶ 8(8). Taking this allegation as true, as the court must do when considering a motion to dismiss, Morton's business dealing with a Missouri-based entity is sufficient to provide specific jurisdiction over Morton under the Missouri long-arm statute. *See Schilling v. Human Support Servs.*, 978 S.W.2d 368, 371 (Mo. Ct. App. 1998) ("The 'transaction of business' provision of the long-arm statute is to be construed broadly so that even a single transaction may confer jurisdiction, if that is the transaction that gives rise to the suit.") (citation omitted); *see also Copeland v. WRBM, LLC*, --- S.W.3d ----, 2023 WL 4712294, at *5 (Mo. Ct. App. July 25, 2023). Plaintiffs have also alleged that Mr. Sahm's exposure to Morton's asbestos-containing products occurred while he was working for the City of St. Louis and the St. Louis County aircraft and helicopter team in Missouri between 1962 and 1999. Together, these allegations successfully allege that Morton's conduct in Missouri—selling asbestos-containing products to the St. Louis County Police Department—is related to the underlying controversy. Though Plaintiffs allegations are sparse and the alleged quantity of Morton's contacts with Missouri is low, the quality of that contact, and the connection between the alleged contact with Missouri and the controversy, weigh in favor of exercising specific personal jurisdiction over Morton. The Court will therefore deny Morton's Motion to Dismiss for lack of personal jurisdiction.

14

B.      Failure to State a Claim

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  A complaint must be dismissed for failure to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Pleadings must include sufficient factual information to provide notice and the grounds on which the claim rests and "to raise a right to relief above a speculative level." *Id.* at 555; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (citation omitted).  On a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

Plaintiffs' claims sound in product liability, and therefore each claim requires allegations sufficient to establish a prima facie showing of the claim's elements.  Claims of strict liability for defective design, like Plaintiffs' Count I, require Plaintiff to establish: (1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the

15

product was sold. *See Sullivan v. Medtronic, Inc.*, 498 F. Supp. 3d 1106, 1114 (E.D. Mo. 2020). To recover on a claim for negligent manufacture, like Plaintiffs' Count II, a plaintiff must establish that the defendant failed to use ordinary care to manufacture the product to be reasonably safe. *See id.* at 1115 n.4 (citing *Redd v. DePuy Orthopaedics, Inc.*, 48 F. Supp. 3d 1261, 1270–71 (E.D. Mo. 2014) (cleaned up).

Morton argues that Plaintiffs' Amended Complaint fails to a state a claim because it "fails to identify any asbestos-containing product manufactured, sold, distributed or installed *by Defendant* which caused the alleged exposure." ECF No. 118 at 9. Morton further argues that Plaintiffs do not allege any specific job sites where Mr. Sahm was exposed to Morton's products, where in the chain of production Morton is located, and the dates of exposure to the products. But these arguments do not address the elements of either a strict products liability claim or a claim for negligent manufacture.

The Court finds that Plaintiffs' allegations, taken as true, establish a prima facie case for both strict product liability and negligent manufacture against Morton. Plaintiffs have alleged the general type of products manufactured by Morton to which Mr. Sahm was exposed, namely: asbestos containing brakes, brake parts, and O-rings. ECF No. 100 at ¶ 8(8). Plaintiffs allege that Morton sold these asbestos-containing products to the St. Louis County Police Department, where Mr. Sahm was allegedly exposed to those products. *Id.* Plaintiffs have alleged that these products were in a defective condition when delivered, i.e., that they contained asbestos fibers and were unreasonably dangerous to when put to their reasonably anticipated use. *Id.* at ¶ 12 and 14. Plaintiff also alleges that the asbestos-containing products directly resulted in Mr. Sahm's lung cancer and

16

eventual death. *Id.* at ¶ 7. Plaintiffs similarly allege the elements of a negligent manufacture, specifically stating that Defendants, including Morton, had a duty to exercise reasonable care to manufacture a reasonably safe product. *See id.* at ¶¶ 20 and 21. Taking Plaintiffs' allegations as true, the Court finds that Plaintiffs have alleged a prima facie case for both strict product liability and negligent manufacture against Morton. As such, Morton's motion to dismiss under Fed. R. Civ. P. 12(b)(6) will be denied.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that The Boeing Company's Motion to Dismiss (ECF No. 111) is **GRANTED**, and Plaintiffs' claims against Boeing only will be **DISMISSED without prejudice** for lack of personal jurisdiction. The Court will enter a separate Order of Dismissal as to Boeing.

**IT IS FURTHER ORDERED** that Morton International, LLC's Motion to Dismiss (ECF No. 117) is **DENIED**.

Dated this 5th day of December, 2023.

                                           */s/ Audrey G. Fleissig*
                                           AUDREY G. FLEISSIG
                                           UNITED STATES DISTRICT JUDGE